436 So.2d 672 (1983)
Alma SPEARS
v.
Modesto AGUILAR, Insurance Company of Florida, Sharice Joseph, New Orleans Public Service, Inc.
No. CA-0535.
Court of Appeal of Louisiana, Fourth Circuit.
July 8, 1983.
*673 Charbonnet & Charbonnet, Jack J. Charbonnet, Kenny M. Charbonnet, New Orleans, for plaintiff-appellee Alma Spears.
Kierr, Gainsburgh, Benjamin, Fallon & Lewis, Judith A. Gainsburgh, New Orleans, for defendants-appellants Modesto Aguilar, Ins. Co. of Florida.
C.B. Ogden, III, C.B. Ogden, II, New Orleans, for defendants-appellants Sharice Joseph and NOPSI.
Before GULOTTA, GARRISON and KLEES, JJ.
KLEES, Judge.
This is an action for personal injuries incurred by a fare-paying passenger on a bus which was involved in a collision with a taxi cab. The passenger filed suit against the taxi driver, his insurer, the bus driver and her employer, New Orleans Public Service, Inc. (NOPSI). The trial court found all defendants liable as joint tortfeasors and awarded plaintiff $37,467. The defendants appeal, each contending that the trial court erred in finding them liable and that the award granted by the trial judge was excessive. Plaintiff answered the appeal, alleging that the trial judge awarded inadequate damages, and seeks an increase of the award.
We find sufficient evidence in the record to warrant the trial court's finding of liability on the part of all defendants. In addition, we find that the award of damages by the trial court was adequate.

FACTS
On February 1, 1980, Alma Spears was a fare-paying passenger aboard a NOPSI bus, driven by Sharice Joseph, which executed a right-hand turn from St. Charles Avenue onto Poydras Street. Before the turn was accomplished, however, the bus and a taxi cab, driven by Modesto Aguilar, collided. As a result of the collision, the bus made a sudden stop which threw plaintiff from her seat whereupon she struck her head and suffered injuries to her back. The parties *674 differ, however, as to their versions of the manner in which the accident occurred.
Mr. Aguilar testified that after picking up a package in the right parking lane of St. Charles Avenue approximately 60 feet from the corner, he proceeded straight in the parking lane through the designated bus stop area to the corner of Poydras. At that time there was no bus in the area and the traffic light was yellow. He stopped and waited for the light to change to green. While his taxi was in this position, a bus pulled up on his left. When the light turned green, the bus made a right turn, striking his vehicle and dragging it forward. He stated that his vehicle never moved after coming to a stop at the corner pursuant to the caution light.
Ms. Joseph testified that she brought the bus to a stop at Poydras in the parking/bus stop area, about 4 to 6 feet from the curb. She claimed that there was no cab or other vehicle in sight and the light was red. When the light turned green, she checked the right side of her bus before making the turn, and saw no vehicles there. While in the process of making the turn, she asserted, the cab apparently came up and tried to get between the rear of the bus and the curb. The bus had all but completed its turn when the accident occurred.
The trial court based its ruling of joint liability on the concurring negligence of the taxi driver and the operator of the bus. Although each defendant denies his own liability and argues the sole responsibility of the other, neither defendant overcomes the presumption of negligence which attaches when a collision between two vehicles injures an innocent third party. This presumption is as follows:
"Our law is well settled that when an innocent third party, such as a guest passenger in a motor vehicle, is injured as a result of a collision between two drivers, each of the drivers is presumed guilty of negligence, and the burden of proof falls upon each to exculpate himself from negligence proximately causing the injury to the third party. Poche v. Frazier, 232 So.2d 851 (La.App. 4th Cir.1970), writ denied, 256 La. 266, 236 So.2d 36 (1970); see also Michel v. State Farm Mutual Automobile Insurance Company, 314 So.2d 535 (La.App. 1st Cir.1975)." Parker v. Travelers Ins. Co., 369 So.2d 1120, 1122 (La. App. 1st Cir.1979), writ refused, 371 So.2d 1342 (La.1979).
In addition, there is a more specific presumption of negligence which is applicable to NOPSI. It states:
"The law applicable to the duty incumbent upon common carriers of passengers is clearly set forth in Carter v. NOPSI, 305 So.2d 481 (La.1975). The Carter case re-affirmed the well established rule that common carriers are charged with the duty of exercising the highest degree of care to their passengers and are liable for the slightest negligence causing injury to those passengers. The mere showing of an injury to a fare paying passenger on a public conveyance and his failure to reach his destination safely imposes upon the carrier the burden of exculpating itself of negligence." Greenwald v. New Orleans Public Service, Inc., 414 So.2d 870, 871, (La.App. 4th Cir.1982).
Upon examination of the record, it is evident that the trial court did not err in holding that the presumption of negligence was not rebutted by either defendant.

LIABILITY OF SHARICE JOSEPH, THE BUS DRIVER
In finding that the bus driver was negligent, the trial court reasoned that she could or should have seen the cab to the right of the bus as she was stopped for the traffic light.
The trial court found that the bus driver failed to see what she should have seen, hence she was negligent in the manner in which she negotiated the right turn. According to her testimony, there was a mirror on the right side of the bus which provided for continuous monitoring of right-hand turns at busy intersections (such as the one at St. Charles and Poydras). Nevertheless, she stated that she did not see the taxi prior to the accident. In failing to *675 notice the cab, she did not maintain a proper lookout, therefore, the trial court found that she was negligent.
NOPSI relies heavily on plaintiff's signed statement given to one of its investigators on February 5, 1980 to show absence of liability. They contend that according to the statement, the sole proximate cause of the accident was the careless driving of Mr. Aguilar, whose cab suddenly appeared in the path of the turning bus. The contents of the statement, however, were recanted by plaintiff in court when she testified that she did not observe the taxi at all before the collision and that the investigator suggested that he already knew how the accident happened.
The trial court apparently adopted the version plaintiff recited in court and gave little weight to the testimony of Mr. Harold Dauphin, the investigator for NOPSI, to whom Ms. Spears made the earlier statement. We recognize that the trier of fact is better situated than the reviewers of the appellate record to assess the credibility of witnesses, and under ordinary circumstances we must rely on his subjective determination. Accordingly we find no error in the court's conclusion that the bus driver was negligent.

LIABILITY OF MODESTO AGUILAR, THE CAB DRIVER
Mr. Aguilar argues that the trial judge erred in finding him negligent per se.
In his "Reasons for Judgment" the trial court stated "... [the] negligence of Modesto Aguilar consists inviolation of the law prohibiting driving a vehicle in a parking lane or bus loading zone..."
There are two pertinent ordinances in the City of New Orleans Municipal Code, 1956:
Section 38-91. Driving in parking lane not permitted.
Where parking is permitted in a lane of traffic immediately adjacent to the curb, no vehicle shall travel in such lane of traffic except for the purpose of stopping or parking, or for the purpose of making a turn, and when making a turn, only within fifty feet (50') from the intersection where the turn is to be made. (M.C.S., Ord. No. 3816, § 1, 6-6-68.)
Section 38-230. Restricted use of a bus stop, livery and taxicab stands.
No person shall stop, stand or park a vehicle other than a bus in a bus stop, other than a livery vehicle in a livery stand or other than a taxi in a taxicab stand, when any such stop or stand has been officially designated and appropriately signed, except that the driver of a passenger vehicle may temporarily stop therein for the purpose of and while actually engaged in loading or unloading passengers, when such stopping does not interfere with any bus, livery vehicle or taxicab waiting to enter or about to enter such zone. All such vehicles when parking or stopping shall be parallel and adjacent to the curb. (M.C.S. Ord. No. 3816, § 1, 6-6-68.)
Mr. Aguilar is correct in his contention that the law governing traffic in a bus stop, while restrictive as to stopping, standing and parking, does not prohibit traveling in such areas for the purpose of making a turn.
Nevertheless, there is sufficient evidence in the record to support the finding that Mr. Aguilar did not overcome the presumption of negligence against him. The testimony of the bus driver, as well as the fact that the right rear wheel of the bus was involved in the accident, indicate that the bus was well into its turn when the collision occurred. Thus, had Mr. Aguilar maintained a proper lookout, he would or should have noticed the bus in time to avoid a collision. Furthermore, Mr. Aguilar did not take any defensive action to avoid the accident, such as sounding his horn, stopping or backing up. According to Mr. Aguilar's testimony, the front ends of the bus and cab were aligned prior to the making of the turn by the bus, and he should have carried out his turn prior to the bus.
Thus we hold that Mr. Aguilar failed to exculpate himself from negligence proximately causing the accident.
*676 Accordingly, we hold that the trial court did not err in finding both drivers concurrently negligent.

QUANTUM
For several years prior to the accident, plaintiff had suffered from a degenerative spinal disease. Dr. Aiken, plaintiff's employer who examined plaintiff following the accident, stated at trial that the accident produced a cervical disc injury with pinched nerve involvement or radiculitis in the right upper extremity, causing pain and weakness in the hand. Additionally, he found probable herniation of the lumbosacral disc on the right side with sciatic pain going down the right leg. He related that, as a result of the injury to her back, plaintiff's work had been impaired and that she had to be assisted by her fellow employees in performing certain tasks. He felt that she was a probable candidate for surgery and referred her to Dr. Henry La Rocca, an expert in orthopedic surgery.
Dr. La Rocca had treated plaintiff from June, 1973 through May, 1976 for neck and back problems which he diagnosed as degenerative arthritis of the spine, both of the back and lower back. He determined, based on the history related to him by the patient and his findings pursuant to a physical examination and x-rays of the patient, that the trauma sustained by her in the accident aggravated her pre-existing condition and caused it to be symptomatic. Dr. La Rocca stated that although he would not have recommended surgery prior to the accident, he presently recommends it. He estimated that plaintiff is now 25% disabled, but that after the indicated surgery, she could expect, at best, to remain 10% disabled. The cost of the surgery, he testified, would be $7,000.
Dr. David Jarrod, a neurosurgeon, examined plaintiff one week after the accident. According to his testimony, plaintiff is probably afflicted with a herniated cervical disc, the surgical treatment of which would cost approximately $7,450.00. He testified that plaintiff's condition was stable prior to the accident on February 1, 1980, but became destabilized and symptomatic thereafter.
Dr. James Williams, an expert in the field of orthopedic surgery, examined plaintiff at the request of NOPSI. On direct examination, he testified that Ms. Spears showed evidence of degenerative disc disease or spondylosis in the cervical portion of the spine. In his opinion, it was a condition that developed prior to, and existed at the time of the accident.
He stated that he failed to find any objective evidence of residual injury or orthopedic disability from the physical or x-ray examination of plaintiff's lower back. The accident, he stated, had no effect on her pre-existing condition.
However, when asked on cross-examination if it was reasonable to conclude that the trauma, which Mrs. Spears sustained in her accident, was the most probable cause of the pre-existing degenerative disc disease in the cervical area becoming symptomatic, he replied in the affirmative.
The trial court accepted the testimony and opinions of Ms. Spears' treating physicians, and gave it more weight than the testimony of Dr. Williams who only examined the plaintiff for purposes of trial. We find no error in his conclusions.
On the basis of the foregoing testimony, the trial court awarded plaintiff $30,000 in general damages, $467 for past medical expenses, and $7,000 for the anticipated surgery, a total of $37,467.
In appraising the damage awards furnished by trial courts, appellate courts in Louisiana must adhere to a standard which grants "much discretion" to the trial judge. LSA-C.C. article 1934(3). Reck v. Stevens, 373 So.2d 498 (La.1979). The Louisiana Supreme Court, in Coco v. Winston Industries, Inc., 341 So.2d 332, 335 (La.1976) declared:
"We do re-emphasize, however, that before a Court of Appeal can disturb an award made by a trial court that the record must clearly reveal that the trier of fact abused its discretion in making the award. Anderson v. Welding Testing Laboratory, Inc. [304 So.2d 351 (La. 1974)], supra; Bitoun v. Landry [302 *677 So.2d 278 (La.1974)], supra; Fox v. State Farm Mutual Automobile Ins. Co. [288 So.2d 42 (La.1973)], supra; Walker v. Champion [288 So.2d 44 (La.1973)], supra. Only after making the finding that the court record supports that the lower court abused its discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded the court. Bitoun v. Landry, supra; Spillers v. Montgomery Ward & Company, Inc. [294 So.2d 803 (La.1974)], supra. It is never appropriate for a Court of Appeal, having found that the trial court has abused its discretion, simply to decide what it considers an appropriate award on the basis of the evidence."
Counsel for defendants do not succeed in showing that the trial court abused its discretion in its total award of $37,467. The cases cited by them are either irrelevant or involve factual circumstances dissimilar to the case before us.
On the other hand, plaintiff has failed to demonstrate that the trial court abused its discretion in awarding her an inadequate amount of damages.
Accordingly, for the reasons discussed herein, we affirm the judgment of the trial court, all costs to be borne by appellants.
AFFIRMED.