| Judge PATRICIA RIVET MURRAY.
This case involves a car-cab intersectional collision. After settling with the alleged tortfeasor and his insurer, the plaintiff, Melvin Winfield, Jr., proceeded to trial against solely his own insurer, Allstate Insurance Company, seeking recovery under his underinsured motorist coverage. From a judgment in favor of Mr. Winfield, Allstate appeals.
FACTS
The collision occurred on September 30, 1999, during afternoon rush hour at the intersection of South Carrollton Avenue (“Carrollton”) and Palm Street in New Orleans. The collision occurred when both drivers, Mr. Winfield and Nassar Alzai Dih, simultaneously attempted to make a right turn from Carrollton onto Palm Street. Carrollton at the point before this intersection is a two-way street with three travel lanes in each direction separated by a median. Both drivers were traveling in the direction of the river (north bound) on Carrollton. Mr. Winfield’s car was in the third travel lane. Mr. Dih’s taxicab was in the right shoulder area, which was designated “No Stopping.” That shoulder area also served as a bus stop for South Car-rollton buses; a bus stop was located in the middle of that block. The ^intersection of Carrollton and Palm Street is controlled by a signal light, which had turned green before the drivers simultaneously began their right turns.
Shortly before the collision, both drivers had dropped off a passenger. Mr. Win-field testified at that time he was on his way home from work and had just dropped off his passenger — a co-worker — at a bus stop on Washington Avenue, which adjoins Carrollton. Mr. Winfield testified that when he stopped for the red signal light at the intersection he was the first vehicle in the third travel lane from the median. Preparing to make a right turn, Mr. Win-field testified that he activated his right turn signal light and checked his rear view mirror, but did not see Mr. Dih’s taxicab. When the light turned green, Mr. Winfield turned from that third travel lane onto Palm Street. As he had almost completed his turn, the taxicab driven by Mr. Dih struck Mr. Winfield’s car on the rear passenger door.
*945 Mr. Dih testified that he dropped off his passenger — a friend not a paying fare — on the right shoulder of Carrollton. When he stopped to drop off his passenger, Mr. Dih testified that there was a line of about five cars in front of him on the shoulder. The cars in that line were waiting to turn right on red from that shoulder area. By the time he dropped off his passenger, Mr. Dih testified that there were no cars in front of him on the shoulder, and the signal light had turned green. Mr. Dih thus drove straight ahead on the shoulder to the intersection. As Mr.'Dih was in the process of turning right on green, he testified that he saw Mr. Winfield likewise beginning his right turn. At that point, Mr. Dih testified that he applied his brakes and honked his horn to alert Mr. Winfield of the impending collision. According to Mr. Dih, he had stopped when Mr. Winfield’s vehicle collided with the left front of his taxicab. Mr. Dih also testified that Mr. Winfield never activated his right turn signal light.
1^Although Mr. Dih admitted to offering Mr. Winfield $20 to settle the matter, Mr. Winfield insisted on waiting for the police. The investigating officer, Officer Vernell Brown, testified that when he arrived on the scene the vehicles had not yet been moved and that “it appeared that Vehicle 2 [Mr. Winfield’s] had the right of way” and was “further onto Palm Street, making his right turn than Vehicle 1 [Mr. Dih’s taxi cab].” On the police report that he prepared, Officer Brown depicted the position in which he found the vehicles; he stated that his sketch showed that Mr. Winfield’s car was about two-thirds onto Palm Street when the collision occurred. Officer Brown also described the location of the vehicles as Mr. Winfield’s vehicle being predominately on Palm Street and Mr. Dih’s vehicle being predominantly on the right shoulder of Carrollton. He depicted on his report the points of impact as the rear passenger side of Mr. Winfield’s car and the front left side of Mr. Dih’s taxicab.
The police report contains a narrative of each driver’s story. Mr. Winfield is quoted as stating that he was stopped in the right lane of Carrollton at the traffic light, which was red. When the light turned green he proceeded to turn onto Palm Street, when he was struck in the right rear side of his vehicle by Mr. Dih’s vehicle. Mr. Dih, on the other hand, is quoted as stating that he was stopped in the “bus lane” — on the right shoulder — on Carroll-ton behind traffic and when the light turned green he proceeded to turn on Palm Street, when Mr. Winfield’s vehicle turned in front of him, and caused an accident. The police report further states that there were no skid marks found and that neither driver reported any injuries.[1]
|4Officer Brown cited Mr. Dih for improper lane usage and lack of reasonable viligence. Lack of reasonable viligence, Officer Brown explained, means “bad judgment.” Officer Brown further testified that he used his best judgment and cited Mr. Dih for that reason because “[t]here is no stopping signs lane, as I would say, in the bus lane for vehicular traffic aside from buses, being that he was in that lane traveling making the right turn, and Vehicle 2 [Mr. Winfield’s] was in the third lane making a right turn, they were involved in an accident.” (Emphasis supplied). Offi *946 cer Brown still further testified, as the trial court noted in its reasons for judgment, that “it is unlawful for Dih to be traveling in the ‘bus lane.’ ” (Emphasis supplied).
Explaining the meaning of the term “bus lane,” Officer Brown testified that term refers to the extreme right lane in which Mr. Dih was traveling. Officer Brown acknowledged that he was unaware of any law designating that shoulder area in question as a “bus lane” and that there was no sign designating it as a “bus lane.” In fact, the signs on Carrollton designated this area as a “No Stopping” area, albeit with a bus stop located in the middle of the block. Nonetheless, Officer Brown testified the term “bus lane” was what his supervisor in the traffic division told him was the proper term to describe that area.
After the accident, Mr. Winfield was treated by two doctors for a knee injury and ultimately underwent surgery for that injury. This suit followed. Mr. Winfield originally named as defendants the taxicab driver, Mr. Dih; the taxicab driver’s employer, United Cabs, Inc.; and them insurer, North American Fire and Casualty Insurance Company; and Mr. Winfield’s own underinsured/uninsured motorist |scarrier, Allstate Insurance Company. As noted, Mr! Winfield settled with the tortfeasor and his insurer for their underlying policy limits of $25,000, leaving as a defendant only Allstate. As a result, the matter went to trial solely on the issue of Mr. Winfield’s contractual claim against Allstate for underinsured motorist coverage.
Following a bench trial, the trial court ruled in favor of Mr. Winfield and against Allstate. In its written reasons for judgment, the trial court stated that it found Mr. Winfield a credible witness. More particularly, the court reasoned:
[T]his Court finds that Dih, who was traveling in the bus lane, was negligent in failing to maintain a proper lookout and failing to yield the right [of] way to Winfield. This Court also finds that Winfield was lawfully making a right hand turn from South Carrollton Avenue onto Palm. In arriving at this conclusion, this Court further finds Winfield to be a credible witness and to have, been truthful in testifying that he had stopped at the red light with his right ton signal activated.
This Court disagrees with Allstate’s argument that Winfield was negligent for failing to initiate his ton from the curb. This Court finds that the bus lane is not a travel lane intended to be a right turn lane. This Court also finds that Winfield could not have avoided being struck in the passenger rear.
Based on the above reasoning, the trial court found the accident was caused solely by Mr. Dih’s negligence and awarded damages totaling $64,069; more specifically, the court awarded general damages of $40,000 and special damages of $24,069 (consisting of $19,269 for past medical bills incurred as of the time of trial and $4,800 in lost wages).[2] This appeal followed.[3]
*947 |fiOn appeal, Allstate assigns two errors: (1) the trial court’s legal error in finding Mr. Dih 100% at fault, and (2) the trial court’s abuse of discretion in awarding $64,069 to Mr. Winfield for his alleged injuries. We separately address these two assignments of error: the first pertaining to liability, the second, to damages.
LIABILITY
Allstate argues that the trial court legally erred in reasoning that “the bus lane [in which Mr. Dih was traveling] is not a travel lane intended to be a right turn lane.” According to Allstate, the trial court’s legal error was its failure to recognize that “the law requires one to make a right turn as close as practicable to the right hand curb,” and that “the law permits turning right within a bus lane within 50’ of the curb.” Allstate thus contends that Mr. Dih should be found free from fault and Mr. Winfield should be found solely at fault. Mr. Winfield’s fault, Allstate argues, is that he failed to make his turn as close to the curb as possible, as legally required, and that by turning from the third travel lane, he left open an entire fourth lane to his right, creating a potential trap.
In support of its position that the trial court made a legal error, Allstate cites the following three New Orleans City Ordinances:
New Orleans Code, § 154-436: Required position and method of turning at intersections.
The driver of a vehicle intending to turn at any intersection shall proceed as follows:
1) Right turns. Both the approach for a right turn and a right turn shall be made as close as practicable to the right-hand curb or the edge of the roadway.[4]
|7New Orleans Code, § 154-875: Restricted use of a bus stop, livery and taxicab stands.
No person shall stop or park a vehicle other than a bus in a bus stop, other than a livery vehicle in a livery stand or other than a taxi in a taxicab stand,, when any such stop or stand has been officially designated and appropriately signed, except that the driver of passenger vehicle may temporarily stop therein for the purpose of and while actually engaged in loading or unloading passengers, when such stopping does not interfere with any bus, livery vehicle, or taxicab waiting to enter or about to enter such zone. All such vehicles when parking or stopping shall be parallel and adjacent to the curb.
New Orleans Code, § 154-379: Driving in parking lane not permitted.
Where parking is permitted in a lane of traffic immediately adjacent to the curb, no vehicle shall travel in such lane of traffic except for the purpose of stopping or parking, or for the purpose of making a turn, and when making a turn, only within fifty feet (50’) from the intersection where the turn is to be made.
Extending § 154-379 (which permits travel within fifty feet of the intersection in an area where parking is permitted adjacent to the curb), Allstate argues that given this accident occurred within fifty feet of the intersection — in fact in the intersection — Mr. Dih was not violating the law by executing a right turn from the shoulder area. Allstate further points out *948 that § 154-875 contains no prohibition against traveling in an area designated as a bus stop for purposes of making a right turn. It follows, Allstate argues, that the trial court committed a legal error in finding that Mr. Dih was improperly traveling in the “bus lane.” Stated differently, Allstate argues that these ordinances should be construed to mean that Mr. Dih, contrary to Officer Jones’ testimony and the trial court’s reasoning, was not unlawfully traveling on the shoulder area of Carroll-ton designated “No stopping.”
|sMr. Winfield counters that even accepting Mr. Dih’s account as correct, Mr. Dih testified there were about five cars parked in line in front of him on that shoulder area when he stopped to drop off his passenger and that he then traveled forward on that shoulder area to the curb. Calculating the length of five cars to be no less than seventy-five feet, Mr. Winfield argues that “it was unlawful for Mr. Dih to have used the bus lane as a travel lane in order to proceed from the point where he discharged a passenger to the area of within 50 feet of the intersection.” Regardless, Mr. Winfield stresses that he had preempted the intersection and almost completed his turn when the collision occurred.
Before addressing Allstate’s contention that the trial court legally erred in misconstruing the cited ordinances, we first address the applicable standard of review. Allstate maintains that the manifest error standard does not apply to review of legal errors. Although technically correct, this is an oversimplification, especially when, as here, the alleged error is in the trial court’s written reasons for judgment.
Although it is a settled rule that an appeal is taken from a final judgment not from the trial court’s reasons for judgment, it is not improper for an appellate court to consider the reasons for judgment in determining whether the trial court committed a legal error. Donaldson v. Universal Eng’g of Maplewood, Inc., 606 So.2d 980, 988 (La.App. 3d Cir.1992). The manifest error standard of review assumes that the trier of fact applied the correct law in arriving at its conclusion. 1 Frank L. Maraist and Harry T. Lemmon, Louisiana Civil Law Treatise: Civil Procedure, § 14.14 (1999). When the trial court commits an error that interdicts the fact-finding process, the manifest error standard does not apply, and the appellate court decides the case on the record without according any deference to |9the trial court. Id. (citing Donaldson, supra; Gonzales v. Xerox, 320 So.2d 163 (La.1975)); Woolley v. CAS Refining, Inc., 94-648, pp. 2-3 (La.App. 3 Cir. 1/11/95), 651 So.2d 860, 862. However, if the legal error only affects one of several parts of a judgment, the appellate court may disregard those factual findings affected by the error and apply the usual manifest error deference standard to the unaffected findings. Maraist & Lemmon, supra, (citing Picou v. Ferrara, 483 So.2d 915, 918 (La.1986)).
Applying these principles to the instant case, a review of the trial court’s reasons for judgment reveals, as Allstate argues, that the trial court based its finding of Mr. Dih’s fault, at least in part, on the premise that he was illegally traveling in the “bus lane,” i.e., the shoulder area designated “No stopping.” The significance of this alleged legal • error, Allstate notes, is that the trial court relied on that faulty premise to conclude that Mr. Dih was solely at fault for failing to yield the right of way to Mr. Winfield, who was making the same right turn maneuver from the third lane of travel from the median.
Although we agree with Allstate that the trial court’s premise was legally erroneous, we disagree with both parties’ construction *949 of the cited ordinances. Indeed, we construe only one of the cited ordinances as potentially applicable— § 154-436, which requires that a right turn be made from the lane as close as practicable to the curb. In so concluding, we acknowledge, as Allstate argues, that in at least four prior decisions we have construed these ordinances under factually similar scenarios. As those decisions support our construction of the ordinances, we briefly review all four of them.
Cyrus v. Saragusa, 301 So.2d 427 (La. App. 4th Cir.1974), involved a car-truck collision. Rejecting the defendant’s argument that the plaintiff illegally |indrove in the parking lane, we construed former § 38-91 (present § 154-379) to find that the plaintiffs driving of his car in the parking lane for less than fifty feet to make a right turn was proper, reasoning: “[pjlaintiff traveled in the parking lane within the permitted distance for the per-’ mitted purpose.” 301 So.2d at 428. We further found fault on the part of defendant driver for “fail[ing] to exercise proper lookout and to observe plaintiffs legal maneuver.” Id.
Spears v. Aguilar, 436 So.2d 672 (La.App. 4th Cir.1983), is even closer on point. Ms. Spears, a fare-paying NOPSI bus passenger, was injured when the bus on which she was riding collided with a taxicab. Immediately before the collision, the cab driver had stopped to pick up a package in the right parking lane of St. Charles Avenue about sixty feet from the corner. The cab driver testified that he then “proceeded straight in the parking lane through the designated bus stop area to the corner of Poydras.” 436 So.2d at 674. According to the cab driver, he stopped at the corner because the traffic light was yellow. While stopped, the cab driver testified that the bus collided with his cab. The cab driver also testified that “the front ends of the bus and cab were aligned prior to the making of the turn by the bus.” 436 So.2d at 675. The bus driver told a different story of the cab apparently coming up and trying to squeeze between the rear of the bus and the curb. Given that the point of impact with the bus was the right rear wheel, we found that the bus had virtually completed its right turn from the travel lane of St. Charles onto Poydras when the collision occurred.
Although in Spears, supra, we affirmed the trial court’s holding that both drivers were concurrently negligent, we agreed with the cab driver’s argument that the trial court was incorrect in finding him negligent per se based on two of the above quoted ordinances, former §§ 38-91 and 38-230 (present §§ 154-379 and 154-_j875).n More precisely, we noted that the trial court in its reasons for judgment stated that the cab driver’s negligence consisted of violating “the law prohibiting driving a vehicle in a parking lane or bus loading zone.” 436 So.2d at 675. Quoting and construing in pari materia those two ordinances, we concluded:
Mr. Aguilar [the cab driver] is correct in his contention that the law governing traffic in a bus stop, while restrictive as to stopping, standing and parking, does not prohibit traveling in such areas for the purpose of making a turn.
Id. (Emphasis supplied). We, nonetheless, found sufficient evidence in the record to support a finding of fault on the part of the taxicab driver for other reasons, including failure to maintain a proper lookout.
Boydell v. New Orleans Public Service, Inc., 503 So.2d 551 (La.App. 4th Cir.1987), was another suit arising out of injuries sustained by NOPSI fare-paying passengers. The NOPSI bus collided with a right turning motorist. Rejecting NOPSI’s argument that the motorist was at fault for violating La. R.S. 32:101, which *950 requires a right turn be made “as close as practicable to the right-hand curb,” we reasoned:
Several busses were blocking the lane next to the curb and she (along with other drivers) made her approach and turn in the next lane. This was the most “practicable” thing to do with the only alternative being to stop in the parking lane for an indefinite length of time while these buses took on and discharged passengers.
503 So.2d at 553.
Ashby v. Anheuser-Busch, Inc., 98-0350 (La.App. 4 Cir. 9/23/98), 719 So.2d 601, involved a collision between a car and a draft beer delivery truck. Both vehicles were attempting to turn right at the corner of Napoleon Avenue onto St. Charles Avenue. The car occupied the lane closest to the right curb, which was also used as a bus stop for Napoleon Avenue buses. The truck occupied the lane to h ¡¡the left, which is the right travel lane on Napoleon Avenue. The trial court found both parties equally at fault. Affirming the trial court’s allocation of 50% fault to each party as not manifestly erroneous, we reasoned:
The fact is that the trial court accepted the testimony of all of the witnesses. Rather than making a credibility call, as the parties indicate, the trial court actually found all of the witnesses credible. The trial court’s oral reasons for judgment indicate that he believed that Mr. Piazza failed to comply with the requirement of LSA-R.S. 32:101(A) that both the approach and the execution of right turns be made “as close as practicable to the right-hand curb or edge of the roadway,” as Ms. Ashby argues. Moreover, the trial judge’s reasons for judgment indicate that he believed the testimony presented by Anheuser-Busch and Mr. Piazza that Ms. Ashby was not as attentive as she should have been when she drove her car into the far right lane next to the delivery truck, which was preparing to make a right-hand turn from the standard right lane. Considering the fact that the accident occurred because both parties were trying to execute a right turn, the trial court’s decision to credit the testimony presented by both parties was not unreasonable.
98-0350, at pp. 4-5, 719 So.2d at 603.
Based on our prior jurisprudence, we construe these ordinances in the factual context presented in this case as neither expressly authorizing, nor prohibiting Mr. Dih from traveling on the shoulder area closest to the curb designated “No stopping” and also used as a bus stop by Carrollton buses. The introductory clause of § 154-379 conditions application of that ordinance to “[wjhere parking is permitted in a lane of traffic immediately adjacent to the curb.” The shoulder area in question is one in which neither stopping, nor parking, is permitted. It follows then that that ordinance is inapposite. Although the area in question does have a bus stop in the middle of the block and is used by Carrolloton buses for that purpose, the “law governing traffic in a bus stop [§ 154-875], while restrictive as to stopping, standing and parking, does not prohibit traveling in such areas for the purpose if making a turn.” Spears, 436 So.2d at 675 (Emphasis supplied). We |13thus conclude that the only relevant ordinance is § 154-436, which requires that a right turn be made from the lane as close as practicable to the curb.
Based on our review of the record, we find that while the trial court was incorrect in finding fault on Mr. Dih’s part for traveling on the shoulder area of Car-rollton, the trial was correct in finding fault on his part for “failing to maintain a proper lookout.” Given that the collision occurred at a point in which Mr. Winfield *951 had almost completed making his right turn, the record supports that finding. Nonetheless, we find the trial court erred in failing to find that there was fault on the part of both drivers.
Even assuming that Mr. Winfield satisfied the requirement that a right turn be made from the lane as close as practicable to the curb, we find that he was negligent in failing to see what he should have seen. Mr. Dih’s taxicab was to Mr. Win-field’s immediate right as he was stopped at the red traffic light waiting to make his turn.[5] Although he testified that he checked his rear view mirror before making his right hand turn and did not see Mr. Dih’s taxicab, a well-settled principle is that for a driver to look and fail to see what he should have seen is the equivalent of the driver “ ‘not looking at all and is negligence.’ ” Davis v. Bowman, 346 So.2d 225, 227 (La.App. 4th Cir.1977) (quoting Jones v. Armstead, 169 So.2d 268, 270 (La.App. 1st Cir.1964)); West v. T.L. James & Co., 142 So.2d 853, 857 (La.App. 1st Cir.1962).
Given the similarity of the drivers’ actions (both were attempting to make a right turn and both were to some degree inattentive), we find as in Spears, supra, and Ashby, supra, that an equal allocation of fault is appropriate. We thus allocate 50% fault to both Mr. Winfield and Mr. Dih.
DAMAGES
Allstate’s second assignment of error is that the trial court abused its discretion in awarding $64,069 in damages. In arriving at that damage award, the trial court stated in its written reasons the following regarding Mr. Winfield’s injuries:
Dr. Daniel Seltzer testified that Winfield reported that he sustained a right knee injury as a result of this accident and had been symptomatic since the accident. After examining Winfield on several occasions, Dr. Seltzer testified that he recommended an MRI, which resulted in Winfield having an arthroseporic surgery [sic]. Dr. Seltzer gave his opinion that it was more likely than not that Winfield’s injuries and the necessity for surgery were a direct result of the accident. Dr. Seltzer testified that during surgery he found a tear in the medial and in the lateral meniscus along with chondromalacia of the patella and syno-vitis of the right knee. After the surgery, Dr. Seltzer instructed Winfield to refrain from working for a period of six to eight weeks following surgery.
The court further noted that it “accepts the testimony of Dr. Seltzer that Winfield will have a better than 50% probability of experiencing arthritic changes in his knee that will cause him to suffer intermittent problems in the future and require the use of anti-inflammatory medication on a symptomatic basis.”
Allstate acknowledges the trial court’s broad discretion in awarding damages and the settled principle that “an appellate court should rarely disturb an award of general damages.” Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993). Allstate, however, contends that given Mr. Winfield’s conflicting statements regarding his alleged injuries, the trial court’s finding of causation of damages was erroneous. In support of its argument that plaintiff failed to establish causation, Allstate primarily relies on two particular inconsistencies.
11BThe first inconsistency was with regard to the injuries plaintiff claimed to *952 have been caused by this accident. Allstate emphasizes the fact that Mr. Win-field initially complained to Dr. Altman of only injuries to his shoulders, neck and back — making no mention of a knee injury-yet when he visited Dr. Seltzer, the orthopedist, Mr. Winfield complained solely of a knee injury — denying any other injury from this accident. Mr. Winfield counters that his knee was the primary injury for which he was seeking compensation through this litigation and stresses that at the time of trial he had already recovered $25,000 from the prior settlement with the tortfeasor and his insurer.
This apparent inconsistency was thoroughly explored at trial. Clarifying that apparent inconsistency and responding to the trial court’s question as to whether plaintiff was claiming damages in this suit for neck, and back or for only his knee, the plaintiffs attorney stated: “[i]t is primarily the knee injury, but there are also some injuries to the neck and back that are contained in Dr. Altman’s records in addition to the knee.” Indeed, the trial court stated in its written reason for judgment that Mr. Winfield “steadfastly maintained that the injuries he suffered in this accident were to his right knee.” Moreover, the trial court resolved this inconsistency by focusing on Mr. Winfield’s knee injury in determining the damage award. We see no need to revisit that inconsistency on appeal.
The second inconsistency Allstate relies upon in support of its argument that plaintiff failed to establish causation of damages pertains to the mechanism of the injury. Allstate notes that Mr. Winfield indicated on his first visit to Dr. Seltzer that the impact threw him “forward inside the vehicle sustaining injury to his right knee” as a result of it striking “either the dash or another blunt object inside the vehicle.” Dr. Seltzer therefore opined that such an impact injury could cause the ^problems Mr. Winfield suffered with his knee. On cross-examination, however, Mr. Winfield testified that he could not remember the mechanism of his knee injury. Allstate, therefore, claims that Mr. Winfield may have simply bumped his knee on the dash when he applied the brakes after the accident. That type of impact, Allstate argues, could have resulted in Dr. Seltzer drawing a different conclusion on causation. Allstate also notes that this was a “low speed collision with minor damages.”
Mr. Winfield counters that Allstate’s contentions lack evidentiary support and that he established that he sustained an impact injury. Regardless, he stresses that the trial court characterized him as a credible witness and that credibility call was not manifestly erroneous. Allstate’s arguments do not convince us that the trial court erred in accepting Mr. Winfield’s account of his knee injury. On this issue, we find dispositive the trial court’s summation of Mr. Winfield’s testimony regarding the mechanism of the injury; specifically, the trial court’s written reasons for judgment state that according to Mr. Winfield the impact of the collision “caused him to strike his right knee on the dashboard.” As Mr. Winfield stresses, the trial court also characterized him as a credible witness. We therefore affirm the trial court’s finding of causation of damages.
CONCLUSION
For the foregoing reasons, we affirm the trial court’s damage award of $64,069, but reduce that damage award by 50% to recognize Mr. Winfield’s comparative fault. The resulting damage award is further reduced by $25,000 to give Allstate credit for the settling tortfeasor’s liability limits. We order that each part bear their own costs.
*953 REVERSED IN PART, AFFIRMED IN PART, RENDERED.

. Attached to the police report were handwritten statements provided by each driver. Mr. Dih wrote that he "was driving [his] car [in the] left lane and all the sudden the other driver de[cided] to do the same turn without signal at the red light. That’s when I hit him.” Mr. Winfield wrote that he "was at the red light at the comer Palm and Carrollton. My right signal blinking. The light turn[ed] green. As I went to turn, a taxicab came on the side of me which w[as] not a lane. As I went to turn right he hit me in the rear on the passenger side above the back tire. This is a three lane street. Not a four lane.”

. Mr. Winfield established that he missed forty-eight days of work. He further established that he earned $100 a day working as a garbage truck driver.

. By joint motion, the parties supplemented the record before this court with a certified copy of an amended judgment. The amended judgment reflects Allstate’s entitlement to a credit for the $25,000 underlying coverage. The correct procedural mechanism to cure this substantive error in the wording of the original judgment was a motion for a new trial; nonetheless, La. C.C.P. art. 1971 authorizes a trial court to grant a new trial on its own motion. Given the parties' agreement coupled with the trial court's ability to cure the substantive error on its own motion, we construe the amended judgment as the proper final judgment before us for review.

. This ordinance tracks the language of La. R.S. 32:101(A), which provides that "[t]he driver of a vehicle intending to turn at an intersection shall proceed as follows: 1) Right turns. Both the approach for a right turn and a right turn shall be made as close as practicable to the right-hand curb or edge of the roadway.”

. As Allstate aptly points out, the line of about five cars waiting on the shoulder to turn right on red likewise may have been to Mr. Win-field’s immediate right.