833 So.2d 1148 (2002)
Rebecca R. SIMMONS, et ux., Plaintiffs-Appellants
v.
Jerry W. KING, Sr., et al., Defendants-Appellants.
No. 36,537-CA.
Court of Appeal of Louisiana, Second Circuit.
December 11, 2002.
*1149 A. Richard Snell, for Plaintiff-Appellant.
Lunn, Irion, Salley, Carlisle & Gardner, Shreveport, for Defendant-Appellant.
Before BROWN, CARAWAY and HARRISON (Pro Tempore), JJ.
BROWN, C.J.,
Plaintiff, Rebecca Simmons, tripped and fell on a cross-tie that had been laid across a pedestrian walkway by the owner/operator *1150 of a truck stop/casino. The trial court found Mrs. Simmons to be free from fault and awarded damages to her and her husband, Thomas Simmons. Defendants, Jerry and Patricia King, d/b/a/ Longwood General Store and Truck Stop, have appealed. Plaintiffs answered the appeal seeking an increase in the damage award. We affirm.

Facts
On the evening of January 18, 1997, Rebecca and Thomas Simmons, along with Roger and Patricia Reeves, went to the Longwood General Store and Truck Stop in Blanchard, Louisiana, to eat. Night falls fast in winter, and it was dark when they left. Mrs. Simmons, who was recovering from back surgery, carefully proceeded down the steps located at the front of the store, using the aid of the railing on her right side and holding the arm of Mrs. Reeves with her left hand. Mrs. Simmons's brother, Roger Reeves, and her husband, Thomas Simmons, followed. At the foot of the steps, they turned right and proceeded towards their car along a paved walkway. Mrs. Simmons tripped and fell over a railroad cross-tie lying across the path and which had been bolted to the asphalt. Mrs. Simmons suffered multiple fractures of her pelvis.

Discussion

Unreasonably Dangerous Condition/Risk of Harm
Both negligence and strict liability theories require proof that the defendant had custody of the thing causing the injury, that it contained a defect, that is, a condition creating an unreasonable risk of harm, and that the defective condition caused plaintiff's injury. La.C.C. art. 2317. Plaintiffs are further required to prove that defendant knew or should have known of the vice or defect. Specifically, La.C.C. art. 2317.1 states:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
Mr. King designed and manually participated in the construction of his store. Not only did he know that the cross-tie was laid across the walkway, it was his decision to put it there. Knowledge is not an issue; rather, defendant argues that the cross-tie did not present an unreasonable risk of harm.
A determination of whether a thing presents an unreasonable risk of harm should be made "in light of all relevant moral, economic, and social considerations." The unreasonable risk of harm criterion entails a myriad of considerations and cannot be applied mechanically. Consequently, the findings of the jury or trial court are afforded great deference and thus, a reviewing court may only disturb the lower court's holding upon a finding that the trier of fact was clearly wrong or manifestly erroneous. Celestine v. Union Oil Co. of California, 94-1868 (La.04/10/95), 652 So.2d 1299; Boyle v. Board of Supervisors, Louisiana State University, 96-1158 (La.01/14/97), 685 So.2d 1080; Reed v. Wal-Mart Stores, Inc., 97-1174 (La.03/04/98), 708 So.2d 362.
Mr. King testified that he placed the cross-tie across the walkway to cause water to flow off to the side rather than "flowing underneath and standing underneath *1151 my building." The cross-tie served no other purpose or utility.
The Kings contend that the trial court made the inaccurate conclusion that the cross-tie presented an unreasonable risk of harm "without any architectural or engineering testimony or evidence whatsoever."
The placement of a four inch high cross-tie directly in a walking path does not require scientific, technical, or other specialized knowledge to ascertain whether it presents an obstacle which creates an unreasonable risk of harm. See La.C.E. art. 702; Ramp v. St. Paul Fire & Marine Ins. Co., 263 La. 774, 269 So.2d 239 (1972).
The Kings argue that the cross-tie Mrs. Simmons fell over was painted yellow; however, upon examination of photographs entered into evidence, we observe that the cross-tie was clearly brown and Mr. King reluctantly testified that at the time of Mrs. Simmon's accident, the cross-tie was a brownish black color. Thus, the cross-tie did not contrast with the color of the asphalt pavement underneath it. Furthermore, Mr. King admitted that he painted it yellow after Mrs. Simmons tripped and fell.
The Kings argue that the trial court erroneously rejected their testimony and that of Yvonne Williams, a waitress at the store, that there was ample lighting. They testified that there were two 100-watt bulbs on either side of the store's front door and a fan which had four 100-watt bulbs connected to it on the ceiling of the porch. Additionally, they stated that there was a string of Christmas lights hung along the eaves of the porch.
The porch was elevated about three feet above the surface of the walkway with a railing along its edge. Mr. King testified that the porch was eight feet wide and was ten to 12 feet in height. The two 100-watt bulbs were located close to the ceiling on either side of the front door to the store which was eight feet from the steps and the four 100-watt bulbs in the fan were located on the ceiling, which is at least ten feet above and several feet from the edge of the porch. There were no lights on the ground to illuminate the walkway. At best these lights would cast shadows on the ground.
As far as the decorative string of lights along the eaves of the porch, the trial court stated:
Certainly seven-watt Christmas bulbs which are 12 feet up or higher are not going to be adequate to illuminate the ground. They are decorative, perhaps somewhat festive, and they serve the purpose of attracting patrons, but they do not illuminate the ground area such as the walkway at the point of this cross-tie at night. The fact that a long term waitress knows the cross-tie is there and the owners know the cross-tie is there does not mean that an unsuspecting patron would see it.[1]
There is no dispute in this case that Mrs. Simmons tripped and fell on the cross-tie in the walkway and that her fall caused her injuries. She had not consumed any alcohol that night, and she was *1152 walking slowly and cautiously, holding onto the arm of her sister-in-law. This cross-tie was elevated approximately four inches above the ground. It was situated in an area specifically designated for store patrons to walk upon when going from the store to the parking lot. It was the same color as the pavement. There were no warning signs, and the lighting only cast shadows across this path at night. The sole purpose of the cross-tie, which was permanently bolted down into the asphalt, was to divert the flow of water. The risk of harm, i.e., the risk of a patron falling and receiving injury, significantly outweighs the social utility of diverting the flow of water. See Boyle, supra. In light of this evidence, we cannot say that the trial court was manifestly erroneous or clearly wrong in finding that the cross-tie created an unreasonably dangerous condition.

Comparative Fault
The Kings argue that the trial court erred in failing to assess any liability to Mrs. Simmons in this accident. However, an appellate court may only reallocate fault if it finds that the trial court was clearly wrong or manifestly erroneous in its allocation of fault, even if the court of appeal would have decided differently had it been the original trier of fact. Hebert v. Brown Bottling Group, 98-0924 (La.10/30/98), 719 So.2d 1043; Clement v. Frey, 95-1119, 95-1163 (La.01/16/96), 666 So.2d 607.
Store patrons are not required to maintain an unwavering gaze down at the ground while walking. Likewise, a conversation need not be curtailed simply because one is walking at the same time. As the trial court noted and the evidence established, Mrs. Simmons was walking with meticulous caution on the night of the accident. She was holding on to Mrs. Reeves with her left arm until Mrs. Reeves left to get the car just prior to the time she tripped over the cross-tie. There was inadequate lighting, no warning signs, and the cross-tie itself was almost as dark as the asphalt under it. Accordingly, we cannot say that the trial court erred in assessing no fault on the part of Mrs. Simmons.

General Damages
The trial court awarded Mrs. Simmons $100,000 in general damages and $358.70 in medical specials. Both parties appeal quantum.
In November 1995, Mrs. Simmons underwent extensive back surgery. The procedure involved a decompression of the spinal canal and the installation of two titanium rods with screws attached to the spine. This surgery was performed by Dr. John Regan, an orthopedic surgeon at the Texas Back Institute in Plano. Mrs. Simmons' rehabilitation was expected to take at least 18 months. Her fall at the Longwood General Store occurred approximately 14 months after her surgery.
Immediately after the fall, Mrs. Simmons felt pain in her right side. Five days following the fall, she was still experiencing pain and sought medical attention from Dr. Don Burt, an orthopedic surgeon. Dr. Burt examined her and ordered x-rays, which revealed a pubic bone fracture.[2] He prescribed pain medication. For approximately two months, Mrs. Simmons was bedridden. Eight months after the accident, on September 5, 1997, she sought medical attention from her surgeon, Dr. Regan, who found that Mrs. Simmons actually had multiple fracture sites. Specifically, he testified by deposition that she had sustained a fracture of that part of the pelvic bone called the pelvic ramus, at the *1153 superior and interior part of it in two locations on both sides. He also found that Mrs. Simmons was suffering from sacro iliac pain as well as osteoporosis. On September 8, 1997, Mrs. Simmons revisited Dr. Burt, who performed a "recheck" examination and reviewed Dr. Regan's notes. Mrs. Simmons has since suffered from varying levels of pain.
In the instant case, we take cognizance of the length of time Mrs. Simmons was bedridden and the fact that she languished in pain for a considerable duration of time. We also note her testimony that she still experiences intermittent pain. Her pelvis was fractured in multiple locations, her healing process has been arduous, and her recovery from the previous back surgery lengthened.
General damages involve mental or physical pain and suffering, inconvenience, loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle which cannot be definitively measured in monetary terms. Fergins v. Caddo Parish School Board, 31,729 (La. App.2dCir.03/31/99), 736 So.2d 943. There is no mechanical rule for determining general damages; the facts and circumstances of each case control. Id.
When damages are insusceptible of precise measurement, much discretion is left to the trial court. This discretion is great, even vast, so that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Only if an award is first found to be inadequate or excessive on the facts of the particular case may the appellate court refer to the awards in similar cases. Greene v. Fox Crossing, Inc., 32,774 (La. App.2d Cir.03/01/00), 754 So.2d 339, writ denied, 00-0944 (La.05/26/00), 726 So.2d 1108.
We do not find that the trial court was manifestly erroneous or clearly wrong in its award. Nor do we find, however, that the trial court's award should be augmented. As previously noted, an award for general damages is insusceptible of precise measurement; accordingly, we do not find that the trial court abused its vast discretion.

Loss of Consortium
Thomas Simmons maintains that the trial court's award of $5,000 for his loss of consortium is inadequate. In general, a claim for loss of consortium has seven elements: (1) loss of love and affection; (2) loss of society and companionship; (3) impairment of sexual relations; (4) loss of performance of material services; (5) loss of financial support; (6) loss of aid and assistance; and (7) loss of fidelity. Brandao v. Wal-Mart Stores, Inc., 35,368 (La. App.2d Cir.12/19/01), 803 So.2d 1039, writ denied, 02-0493 (La.04/26/02), 814 So.2d 558. To be compensable, it is not necessary for a claim for consortium to include damages from each type of loss. Brandao, supra. The operative question is whether the trial court abused its discretion in finding that Mr. Simmons was entitled to $5,000 for loss of consortium.
Although Mrs. Simmons was improving prior to the fall at Longwood store, we note that due to her prior back surgery, many of Mrs. Simmons' activities had already been curtailed. In fact, the trip to the Longwood store was her first outing following her back surgery. Obviously, the fall at the Longwood store extended Mrs. Simmons' recovery; however, we can not say that the trial court's consortium award was an abuse of discretion.

*1154 Conclusion

For the reasons set forth above, the judgment of the trial court is AFFIRMED. All costs are assessed to defendants, Jerry and Patricia King d/b/a Longwood General Store and Truck Stop.
AFFIRMED.
NOTES
[1] In a separate assignment of error, Mr. and Mrs. King urge that the trial court erred in "finding that plaintiff's brother, a fireman, was a lighting expert, without any evidentiary basis[.]" Mr. Reeves testified that it was "dark" and that there was no light shining on the walkway where the cross-tie was located. His testimony was based upon his own perceptions on the evening of the accident and aided the trial court in discerning how much light was present on the walkway where the cross-tie was located on the night in question. Perhaps most important is the fact that the trial court never referred to Mr. Reeves as an expert, and noted that his opinion was only adduced as lay testimony.
[2] Dr. Burt testified that this is the bone directly below the hip. The pubic bone is located in the lower part of the pelvis about four inches below the hip socket and the hip joint.