882 So.2d 757 (2004)
Jacquelyn KOEHN, Plaintiff-Appellant
v.
Clifford RHODES, Jr., et al, Defendants-Appellees.
No. 38,941-CA.
Court of Appeal of Louisiana, Second Circuit.
September 24, 2004.
*759 Alan Stegall, for Jacquelyn Koehn.
Lynn E. Estes, Jr., Shreveport, for Clifford Rhodes.
Bodenheimer, Jones, Szwak & Winchell by Mary E. Winchell, Shreveport, for Clifford Rhodes and U.S. Agencies Casualty Insurance Co.
Hubley, Marcotte, Rhodes & Joffrion by Lydia M. Rhodes, Shreveport, for Economy Fire & Casualty Insurance Company and Jennifer Graves.
Cook, Yancey, King & Galloway by Lee H. Ayres, Scott L. Zimmer, Douglas Lee Harville, Shreveport, for Government Employees Insurance Company.
Tracy L. Oakley, for Safeway Insurance Company of Louisiana.
Before WILLIAMS, GASKINS and CARAWAY, JJ.
*760 CARAWAY, J.
The plaintiff in this appeal seeks review of the trial court's awards for damages and costs arising from an automobile accident. Finding no abuse of the trial court's discretion in the rulings for general damages and costs, we affirm those awards. However, the trial court's unexplained rejection of certain medical expenses incurred during the interval for plaintiff's recovery represents error, requiring our amendment of the award for special damages.

Facts
The suit arises from a vehicular collision on May 27, 2001 between a car and a truck at a heavily traveled intersection in Shreveport, in which occupants of both vehicles sustained injuries. The appellant, Jacquelyn Koehn, was a guest passenger in a 1991 Nissan 300ZX. The owner of the Nissan, James Ladner, sat in the front passenger seat and his girlfriend, Jennifer Graves, was driving. At trial, Ladner, Graves and Koehn all testified that the traffic signal on Mansfield Road was green as they approached the intersection. The accident occurred at approximately 4:30 a.m.
Defendant, Clifford Rhodes, Jr., and his passenger occupied a Chevy pick-up truck owned by Rhodes' brother, Christopher Wright. Rhodes testified that he was stopped at the traffic signal at Mansfield Road and Jewella Avenue. After the light turned green, he waited for oncoming traffic before attempting a left turn. The traffic signal cycled from solid green to a protected green arrow. The vehicles collided when Rhodes was in the middle of the intersection, and the truck rolled into a ditch. Rhodes testified that he never saw the red Nissan coming.
As a result of the accident, the Nissan driver's side air bag inflated to protect Graves. She remained in the vehicle until emergency medical personnel helped her out and thereafter, she was transported to the hospital. Koehn remained in the back seat until Graves was extricated. After getting out of the car, she walked to the convenience store nearby to call her boyfriend. Rhodes was removed from the truck by emergency medical personnel and also transported to the hospital for treatment of his injuries.
Later on that day, Koehn went to the emergency room because of pain and discomfort in her right hip and right wrist. She returned to the emergency room a second time five days later. Thereafter, she was treated by a chiropractor, Dr. Rizzo, between June 15 and August 15. She made a third emergency room visit on August 10. Although the chiropractic treatment helped with some symptoms, she was still experiencing right hip and leg pain.
In late August, the chiropractor referred her to Dr. Etheredge, an orthopedic surgeon, for these problems. Koehn testified that she had no health insurance coverage, but after the accident when she had to change jobs, her new employer offered health insurance benefits so she could obtain medical treatment with Dr. Etheredge. He examined her and ordered an MRI, which revealed pre-existing degenerative changes and a bulging disc at L-5/S-1. Koehn saw Dr. Etheredge five times between August and February, 2002, when he retired. He treated her conservatively, prescribing physical therapy, exercises and medication. After Dr. Etheredge retired from practice, Koehn consulted Dr. Foss, her primary care physician, when her symptoms flared up again. Dr. Foss referred her to another orthopedic surgeon, Dr. Mays, and a spine specialist, Dr. Goodman, for additional medical treatment. Koehn calculated her total expenses for medical treatment as $11,744.44.
*761 At trial, the parties stipulated that the truck driven by Rhodes was primarily insured by USAgencies and also covered by an excess insurance policy issued by Safeway. They also stipulated that the Ladner vehicle was insured by Economy Fire & Casualty and that Ms. Koehn's U/M insurer was Geico. The policy limits were as follows:

 US Agencies $10,000 per person/$20,000 per occurrence
 Safeway $10,000 per person/$20,000 per occurrence
 Economy $25,000 per person/$50,000 per occurrence
 Geico $10,000 U/M

After a bench trial, the trial court issued written reasons for judgment on the liability issue, finding that both drivers were at fault for the accident. The trial court assigned Graves 40% of the fault and Rhodes 60% of the fault. Rhodes settled with Economy Fire & Casualty, leaving the trial court's assessment of quantum for Koehn's damages as the only remaining issue. In reasons for judgment, the court noted that because Koehn discontinued physical therapy against Dr. Etheredge's advice and thus failed to mitigate her damages, her recovery of medical expenses was limited to the particular expenses related to specific therapies.
The trial court's judgment reduced Koehn's special damages awards to $5,556.58 for medical expenses and $166.23 for lost wages, and awarded her $9,500 general damages for injuries related to the accident. Accordingly, on September 16, 2003, Rhodes and USAgencies were cast in judgment for $9,133.69, their pro rata share of Koehn's damages, plus judicial interest. Graves and Economy Fire & Casualty were cast in judgment for $6,089.12, their pro rata share of Koehn's damages, plus judicial interest. Koehn's claims against Rhodes' excess insurer and her U/M carrier were dismissed at her cost.
After trial, Koehn moved the court to tax expenses as costs incurred in connection with the suit. Economy Fire & Casualty's counsel opposed the motion, arguing that because Koehn did not prevail against Safeway, the excess insurer, it should not bear the expenses of Koehn's prosecution of suit against Safeway, such as the cost of filing a supplemental and amending petition ($330.00) and subpoena costs, and that those costs should be taxed to Koehn instead. Economy Fire & Casualty also argued that Dr. Etheredge's expert witness fee of $750.00 was "excessive" and that the trial court should reduce it. After a contradictory hearing, the trial court excluded some of the costs associated with Koehn's claims against Safeway and Geico. The judgment taxing costs in accordance with the trial court's instructions from the bench was entered and signed on October 8, 2003.
Koehn has appealed both judgments.

Discussion
In two assignments of error, Koehn contests, (i) the ruling of the trial court discounting the extent of her injury after September 11, 2001, for her failure to continue physical therapy, and (ii) the ruling awarding $9,500 in general damages for her injury. The trial court made the following determination:
Ms. Koehn saw Dr. Lee Etheredge beginning on August 22, 2001. From August 24 through September 11, 2001, Ms. Koehn participated in physical therapy; however, on September 11 she discontinued therapeutic treatment against the advice of Dr. Etheredge. The Court finds the therapy discontinuation to be troublesome with the inferences being *762 (a) her injuries and symptoms from the June 1, 2001 accident had subsided; and/or (b) after September 11, 2001, she declined to mitigate her damages. In addition, she testified that during this period of time, she enjoyed activities, including dancing, and painted a room at her house.
* * *
Furthermore, it is reasonable to conclude based on the deposition testimony of Dr. Etheredge that had Ms. Koehn managed her condition properly, her symptoms from this May 27, 2001 accident would have subsided in six months.
An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless such finding is clearly wrong. Brown v. Brookshire's Grocery Co., 38,216 (La.App.2d Cir.3/12/04), 868 So.2d 297; Stobart v. State, through Dep't of Transp. & Dev., 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). In fact, "where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." Stobart, supra. The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one in light of the evidence in the record. Theriot v. Lasseigne, 640 So.2d 1305, (La.1994); Stobart, supra.
General damages involve mental or physical pain and suffering, inconvenience, loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle which cannot be definitively measured in monetary terms. Simmons v. King, 36,537 (La.App.2d Cir.12/11/02), 833 So.2d 1148; Fergins v. Caddo Parish School Board, 31,729 (La.App.2d Cir.3/31/99), 736 So.2d 943. There is no mechanical rule for determining general damages; the facts and circumstances of each case control. Id.
When damages are insusceptible of precise measurement, much discretion is left to the trial court. La. C.C. Art.1999. This discretion is great, even vast, so that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Only if an award is first found to be inadequate or excessive on the facts of the particular case may the appellate court refer to the awards in similar cases. Greene v. Fox Crossing, Inc., 32,774 (La.App.2d Cir.3/1/00), 754 So.2d 339, writ denied, 00-944 (La.5/26/00), 762 So.2d 1108.
Dr. Etheredge described Koehn's condition as tightness in her neck with some restricted range of motion. She also had pain in her lower lumbar area and in her right hip. While her MRI revealed a degenerative disc bulge at L-5/S-1, there was no evidence that the bulge was causing any pressure on the nerve roots. There was also a pre-existing spondylolisthesis at L-5/S-1 which was aggravated by the accident. Dr. Etheredge stated that with the physical therapy he prescribed, Koehn's condition could be expected to resolve in six months, but that she would always have a tendency to be able to overstrain her back due to the degenerative disc problem.
Koehn therefore asserts manifest error in the trial court's view that her injury subsided in three and one-half months, by September 11. She argues that while she discontinued physical therapy sessions because they interfered with her employment, she continued the recommended physical exercises at home.
We find Koehn's arguments on these points too narrow in view of the trial *763 court's broad task of assessing the extent and duration of the general damages for this soft tissue injury. The trial court's emphasis on Koehn's cessation of physical therapy demonstrates credibility concerns regarding the rate of abatement of Koehn's pain and suffering. This is always a difficult measure for the court in assessing such injuries. Credibility of the injured plaintiff weighs greatly. From our review of the record, the trial court's view of the extent of Koehn's pain and suffering was not unreasonable and the $9,500 award for general damages for the six-month injury was not an abuse of discretion.
Koehn's next assignment of error asserts that the trial court erred in failing to award as special damages all medical expenses she incurred as a result of the accident. Our review of the trial court's award and the invoices for those expenses for the months through the end of Dr. Etheredge's services reveals the following:

 Actual
 Medical Trial Court
 Expenses: Allowance:
 WK-S Emergency Room $ 2,979.58 $ 2,979.58
 (first visit-5/27/01)
 WK-S Emergency Room $ 556.55 $ 0.00
 (second visit-6/1/01)
 Eugene L. Rizzo, D.C. $ 1,795.00 $ 0.00
 (6/15/01-8/15/01)
 WK-S Emergency Room $ 536.79 $ 0.00
 (third visit-8/10/01)
 Physical Medicine & Rehab. $ 683.00 $ 683.00
 (8/24/01-9/11/01)
 J. Lee Etheredge, M.D. $ 1,024.00 $ 694.00
 (5 visits 8/22/01-2/28/02)
 J. Lee Etheredge, M.D. $ 1,200.00 $ 1,200.00
 (MRI 9/12/01)
 Christus Schumpert $ 1,153.41 $ 0.00
 (bone scan-2/8/02)
 Diagnostic Imaging Associates:
 Dr. Leopard (read MRI) $ 317.00 $ 0.00
 Dr. Peavy (read bone scan) $ 182.00 $ 0.00
 Drug Emporium
 (5/27/01-12/15/01) $ 91.60 $ 0.00
 _________ __________
 Total: $10,518.93 $ 5,556.58

Special damages are those which either must be specially pled or have a ready market value, that is, the amount of damages supposedly can be determined with relative certainty, such as the plaintiff's medical expenses incurred as a result of the tort. Neloms v. Empire Fire & Marine Ins. Co., 37,786 (La.App.2d Cir.10/16/03), 859 So.2d 225; Moody v. Blanchard Place Apartments, 34,587 (La.App.2d Cir.6/20/01), 793 So.2d 281, writ denied, 01-2582 (La.12/14/01), 804 So.2d 647 (citing Wainwright v. Fontenot, 00-492 (La.10/17/00), 774 So.2d 70). The discretion afforded the trier of fact to assess special damages is narrower or more limited than the discretion to assess general damages. Neloms, supra, Moody, supra, Eddy v. Litton, 586 So.2d 670 (La.App. 2d Cir.1991). Some special damages, such as medical and related expenses, are easily measured. Eddy v. Litton, supra. A tortfeasor *764 is required to pay for the cost of overtreatment or unnecessary medical treatment unless the overtreatment was incurred in bad faith. Vines v. Wood, 34,555 (La.App.2d Cir.4/4/01), 785 So.2d 126; Jones v. Super One Foods/Brookshires Grocery Co., 33,683 (La.App.2d Cir.8/23/00), 774 So.2d 200; cf. Chambers v. Graybiel, 639 So.2d 361 (La.App. 2d Cir.1994), writ denied, 644 So.2d 377 (La.1994). In Jones, supra, this court faced a situation regarding the special damage award which is opposite from the present, yet the allowance for recovery is telling. The trial court awarded the plaintiff general damages for a "six-eight week period of aggravation" of previous injuries but extended plaintiff's recovery for medical expenses to those incurred eight months following the accident. In affirming the award for special damages, this court acknowledged that such expenses in the extended eight-month period may have been for overtreatment, but were not shown to have been made in bad faith.
In the trial court's written reasons in this case, there was no specific discussion regarding why the above listed medical expenses were excluded. As quoted above, the trial court recognized the September 11 date when Koehn ceased physical therapy, yet, at the same time, acknowledged Dr. Etheredge's opinion that Koehn's symptoms could continue for up to six months, which was approximately the time when Dr. Etheredge ceased his treatment. Koehn, who was initially without medical insurance, utilized the emergency room three times and the services of a chiropractor before she ever saw Dr. Etheredge, and well before September 11. Nevertheless, without explanation, the trial court did not give compensation for those expenses and others during the period recognized by the court for Koehn's pain and suffering.
By the clear implication of Civil Code Article 1999, these omitted medical expenses are susceptible of precise measurement and were incurred during the recognized period of injury. Thus, the "much discretion" afforded the trial court under Article 1999 for general damages is not appropriate and the standard of review is much closer to manifest error. All of the $10,518.93 in expenses listed above occurred from the time of the accident through the time of Dr. Etheredge's treatment. Since Dr. Etheredge's treatment appears appropriate and was relied upon by the trial court, we find the expenses through the time of his treatment reasonable and not indicative of overtreatment. Accordingly, we amend the trial court's award for the special damages listed above, making the total award $10,518.93.
Finally, Koehn challenges the trial court's reluctance to tax to the defendants cast in judgment a portion of court costs associated with her claim. Specifically, the trial court assessed the cost of filing plaintiff's amended petition naming Safeway, Rhodes' excess insurer, and Geico, the U/M carrier, as additional defendants, against Koehn instead of the defendant/insurers who were cast in judgment.
Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable. La. C.C.P. art.1920. The court has great discretion in fixing costs. City of Shreveport v. Chanse Gas Corp., 34,958, 34,959 (La.App.2d Cir.8/22/01), 794 So.2d 962, writs denied, 01-2657, 01-2660 (La.1/4/02), 805 So.2d 209. While it is the general rule that the party cast in judgment should be taxed with costs, the trial court may assess costs in any equitable manner. Spillers v. ABH Trucking Co., Inc., 30,332 (La.App.2d Cir.4/13/98), 713 So.2d 505, writs denied, 98-1313 *765 (La.6/26/98), 719 So.2d 1063, 98-1327 (La.6/26/98), 719 So.2d 1287. A prevailing party may be taxed with costs if that party in some way incurred additional costs pointlessly or engaged in other conduct which would equitably justify the assessment of costs to the prevailing party. Id.
On the basis of this law, we cannot say that the trial court's assessment of a portion of the costs against the prevailing party was an abuse of discretion. Koehn's claim against Safeway and Geico did not prevail and the court costs directly associated with those claims may be assessed to Koehn. This assignment of error is without merit.

Conclusion
For the foregoing reasons, the trial court's judgment taxing costs is affirmed. The judgment of the trial court on quantum is affirmed insofar as the award for general damages, but the judgment for medical special damages is amended to award $10,518.93, including liability upon defendant Safeway Insurance Company of Louisiana, the excess liability insurer of defendant Clifford Rhodes, for any portion of the increased award in excess of the USAgencies policy. Costs of this appeal are assessed to Clifford Rhodes and Jennifer Graves and their respective insurers in proportion to their fault as assessed by the trial court.
AMENDED, AND AS AMENDED, AFFIRMED.