889 So.2d 1249 (2004)
Patricia Dianne HICKMAN, Plaintiff-Appellee/Appellant,
v.
James Keith BATES and Sheila Quick Bates, Defendants-Appellants.
No. 39,178-CA.
Court of Appeal of Louisiana, Second Circuit.
December 15, 2004.
*1250 Bethard & Bethard, L.L.P. by James G. Bethard, Coushatta, for Defendants.
C. Calvin Adams, Jr., Tallulah, for Plaintiff.
*1251 Before BROWN, CARAWAY and LOLLEY, JJ.
CARAWAY, J.
In this case, the plaintiff's inherited interest in her mother's former community property was sold by plaintiff to her cousin and his wife at the urging of her father. Plaintiff brings this action to rescind the sale transactions for fraud and lesion. The trial court found that the twenty-year-old plaintiff was paid only $500 for her one-half interest in approximately 280 acres of land in reliance upon her father's and cousin's assertions and representations that amounted to fraud. Finding no manifest error in the trial court's determination, we affirm the ruling concerning fraud but reverse the trial court's refusal to grant the additional remedy for attorney fees afforded under La. C.C. art. 1958.

Facts
In October 1998, Patricia Hickman, now McCool, ("Patricia"), age 20, received a phone call from her father, Joe Hickman ("Joe"), telling her that he needed to talk to her about something important that could not be discussed over the phone. Joe was ill with cancer and requested that Patricia travel to where he was living in Castor, Louisiana. Joe was living with his sister, Christine Bates, and her husband Wiseman Bates, in the Hickman family home. Christine and Wiseman are the parents of James Keith Bates ("Keith"); James is married to Sheila Bates. Because Patricia had no driver's license or car, she asked Michelle Stokes to drive her from her home in Delhi to see her father. Michelle Stokes had been a foster child of Joe and Patricia's mother, Ingrid, who had died in November 1985.
Patricia arrived in Castor on October 6, 1998. Patricia was informed she could not stay at Christine's house because of continuing personal difficulties between the two, but was allowed to visit Joe there. Later that day, Joe informed Patricia that his important concern was for her to sell her interest in family land in Bienville Parish to Keith and Sheila. Joe expressed both his interest in keeping the property in the family and doubts that Patricia would be able to maintain it. Patricia did not disagree with her father's proposal.
In keeping with Joe's directives, Keith had previously obtained sale documents to two pieces of property which were prepared by a lawyer. The first property, located in Bienville Parish, was comprised of two tracts of land containing approximately 45 acres of woodlands. The other tract, located in Madison Parish, Louisiana, contained 236.87 acres of land. That land, which included Joe and Ingrid's home, was utilized solely for crawfish farming.
Patricia was Ingrid's heir to a one-half interest in each of these tracts. Although Ingrid's succession had been opened by Joe in 1989, at the time of the October 6 transactions, no judgment of possession had ever been rendered. Joe also filed Chapter 12 bankruptcy, personally and on behalf of the estate, in 1989. Following the confirmation and fulfillment of a 1990 bankruptcy plan, Joe received a discharge from these proceedings in 1994. Patricia was not placed into possession of Ingrid's one-half interest in the subject properties until December 7, 1999, some two months after Joe's death.
On the evening of October 6, 1998, the two deeds were executed by Patricia at Christine's home before notary David Bolyer. The Bienville Parish property deed purported to convey all of Patricia's and Joe's rights in the 45 acres to Keith and Sheila for the sum of $1,000 and other valuable consideration. The Madison Parish deed was executed solely by Patricia and conveyed her undivided one-half interest in the property to Keith and Sheila for *1252 the sum of $100 and other valuable consideration. There was no assumption of any mortgage indebtedness on the property by the Bateses. The trial court ultimately determined that Patricia was paid nothing for the Madison Parish property and that she received $500 for her interest in the Bienville Parish land.
On October 20, 1998, Joe sold his half-interest in the Madison Parish property to Beverly Joyce Fuller in return for her assumption of an outstanding mortgage indebtedness on the entire property of $128,000 as set forth in the deed. Fuller is the companion of Larry Foster, the first cousin of Joe. Fuller and Foster had assisted Joe in raising Patricia after Ingrid's death. Patricia's two minor children also lived with the couple who had worked the Madison Parish farm since 1999. Fuller had continued to make the mortgage payments and pay taxes on the property. The appraisal evidence showed the value of the Madison Parish farm land to be $259,000.
With the assistance of Larry Foster, Patricia instituted the present action against Sheila and Keith on March 11, 1999. Prior to trial, Keith and Sheila filed an exception of no right of action, urging that the sales were not subject to being rescinded on the grounds of lesion beyond moiety. The defendants argued that at the time of the transactions, Patricia transferred only a "hope" that she might one day be placed in possession of the tracts, an incorporeal immovable which is exempted from lesionary rescission. The trial court referred the exception to the merits.
After considering the evidence and testimony presented at trial, the court rejected the arguments made in the exception finding that Patricia owned the subject tracts (corporeal immovables) on the date of Ingrid's death in 1985. The court further entered judgment in favor of Patricia and rescinded both sales finding that the actions of Keith and Joe fraudulently vitiated Patricia's consent to the transactions. In its oral reasons for judgment, the trial court also determined that both sales were lesionary. The trial court denied damages and attorney fees and assessed costs against Keith and Sheila, including $1,000 for expert witness fees.
On appeal, Keith and Sheila ("appellants") argue that the trial court erred in denying their exception of no right of action, in finding that the sales were lesionary, and in failing to give them the option to keep the property after paying an additional amount. Appellants also argue that the trial court erred in rescinding the transactions on the grounds of fraud because the law places no duty on the buyer to make sure the seller is fully informed about the transaction and because Patricia could not prove that she was damaged by the sale of the valueless property. Finally, the appellants contend that Patricia should be equitably estopped from pursuing the present action because she later signed the petition seeking possession of the subject properties, ultimately legitimizing the sales.
Patricia has also appealed arguing that the trial court erred in denying her claim for attorney fees and in awarding only a portion of two expert appraisers' fees as costs.

Discussion
We first observe that the only issues for review on appeal are those adjudicated in the final judgments because this court reviews judgments and not reasons for judgment. Rogers v. Stockmon, 34,327 (La.App.2d Cir.11/01/00), 780 So.2d 386; Pine v. Doolittle, 28,141 (La.App.2d Cir.6/26/96), 677 So.2d 686, writ denied, 96-2269 (La.5/30/97), 694 So.2d 240. In this matter, there are two final judgments before us, one rescinding the subject contracts on the ground of fraud and the *1253 other denying appellants' exception of no right of action.

Fraud
A contract is formed by the consent of the parties. La. C.C. art. 1927. However, consent may be vitiated by error, fraud, or duress. La. C.C. art. 1948. Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Shelton v. Standard/700 Associates, 01-0587 (La.10/16/01), 798 So.2d 60. Fraud may also result from silence or inaction. La. C.C. art. 1953. Error induced by fraud need not concern the cause of the obligation to vitiate consent, but it must concern a circumstance that has substantially influenced that consent. La. C.C. art. 1955. Fraud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill. However, this exception does not apply when a relation of confidence has reasonably induced a party to rely on the other's assertions or representations. La. C.C. art. 1954. Fraud need only be proven by a preponderance of the evidence and may be established by circumstantial evidence. La. C.C. art. 1957.
The district court's findings with respect to a claim of fraud are subject to the manifest error rule. Ballard's Inc. v. North American Land Development Corp., 28,437 (La.App.2d Cir.6/26/96), 677 So.2d 648. Where there is conflicting testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even when the appellate court may feel that its own evaluations and inferences are as reasonable as those of the trial court. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The testimony relating to the sales of the properties is contradictory. The only information about the sales given to Patricia on October 6 resulted from one very limited and suspect discussion between Joe, Patricia and Keith. Keith and Patricia disagree as to the content of that discussion. Patricia recalled that Joe told her that he wanted to keep the land in the family because she would not be able to take care of it. She remembered, however, that the three discussed only the sale of the Bienville Parish property. At that time, she did not know she had an interest in the Madison land. Patricia remembered Joe asking her what she thought the Bienville property was worth and although she agreed to take $300, Keith offered $500. At the time of the signing, Patricia claimed that nobody explained to her what she was signing and that the subject documents were stacked on top of one another. She did not read the documents because she trusted Keith and her father.
Keith admitted that he, Joe and Patricia discussed the sales while driving in search of a notary on the evening of October 6. He also agreed that Patricia wanted $300 for the property but that he offered her $500. Keith claimed, however, that the discussions concerned both pieces of real estate. Keith agreed with Patricia that the notary did not explain anything regarding the price or the property descriptions. He had no idea of the actual value of the land on the date of the sales, but he had paid an additional $1,609 to pay off the mortgage on the Bienville Parish property.
Evidence relating to the value of the properties included that of expert appraisers who valued the Madison Parish property at $259,000 and the Bienville Parish property at $20,700. Although the data from Ingrid's succession revealed that considerable debt excessively encumbered the property at her death and prior to the *1254 bankruptcy proceedings, other evidence revealed that the mortgage indebtedness, having been reworked through the Chapter 12 Plan of Adjustment, was considerably less in 1998 than the value of the disputed tracts.
In its very thorough and well-reasoned oral ruling, the trial court made the following findings of fact concerning its determination of fraud:
The Court finds that Patricia's intellectual abilities are limited, both from her lack of education and from her mental condition that requires medication.
* * *
Considering her situation, her youth, she was then 20 years old, and her limited abilities, as well as her lack of prior knowledge of the purpose of the visit, and her father's illness, and the fact that she trusted her father and her cousin, the Court finds that Keith had a responsibility to make sure Patricia was informed fully about the transactions and make sure that she understood everything she was doing and the import of everything she was doing, including the fact that she would own nothing, and including the price considerations involved before she signed those documents. The Court finds that Keith's failure to inform his young, limited, first cousin was intentional and was done to obtain an advantage over her. That is, of divesting her interest in 45 acres in Bienville Parish and 236.87 acres in Madison Parish for a pittance.
Although obtaining at least a rough idea of the value of the land is not particularly difficult or inconvenient and does not require a special skill, the Court finds that both Joe, Patricia's father, and Keith, her cousin, knew of Patricia's limitations, both youth, lack of education and limited ability to understand. The Court finds that they both knew that she was a simple person who would be inclined to trust them without reservations because they were her father and her cousin. The Court finds that their relationship to Patricia induced her to rely on them because she did trust them to protect her best interest.
On these findings, the Court finds that the actions of Patricia's father and her uncle were fraudulent. The Court finds that Keith knew that the actions of his uncle, Joe Hickman, were fraudulent, and that his actions, coupled with Keith's actions, induced Patricia to sign the two deeds on October 6, 1998. The Court finds that these actions were intended to get Patricia to transfer her interest to all of the property to Keith and that these actions vitiated her consent to those transfers.
We can discern no manifest error in these determinations. The trial court's conclusions regarding Patricia's diminished capabilities are reasonably supported by the record before us. Fuller confirmed Patricia's inability to take care of her finances or her children. The motives of Joe and Keith were clearly disputed by the evidence. In cases involving issues of competency and motive, the trial court is in a unique position to better see and hear the witnesses and observe the nuances of demeanor evidence not revealed in a cold record. In re A.J.F., 00-0948 (La.6/30/00), 764 So.2d 47; Adkins v. Huckabay, 99-3605 (La.2/25/00), 755 So.2d 206.
Likewise, the trial court was well justified in its reliance upon the provision of the second paragraph of Civil Code Article 1954. Both Joe and Keith enjoyed a "relation of confidence" status with the young plaintiff. The complicated nature of the legal transactions and documents caused Patricia to turn to that confidence with her family members, who failed to provide her with the truth of the transactions.
*1255 Finally, contrary to appellants' assertions, we do not find the disputed property valueless by any showing of overwhelming mortgage indebtedness. The stringent efforts of appellants in this litigation to keep title to the property belie the argument that the property was hopelessly mortgaged to a third party(s) at the time of the 1998 deeds. Because of the 1990 Plan of Adjustment in the bankruptcy proceedings and the later discharge from bankruptcy, the properties had considerable unencumbered equity values in 1998. Likewise, the fact that the Succession of Ingrid Hickman had not been closed out in 1998 is of no moment. Her debts existing at the date of her death in 1985 had been effectively administered through the federal bankruptcy proceeding which ended in 1994, and Joe Hickman, as administrator, had long been in violation of the duty of La. C.C.P. art. 3197 to close the succession. Thus, there was no administration contingency hanging over the properties in 1998, diminishing their values to Patricia.
Accordingly, we find that the trial court committed no error in rescinding the sales on the ground of fraud. This portion of the judgment is affirmed.
The rescission of the sales for fraud moots the remaining issue regarding the denial of appellants' exception of no right of action relating to the issue of lesion beyond moiety. Moreover, the finding of fraud precludes any estoppel claim by the appellants because estoppel is an equitable remedy which can be pleaded only by those with clean hands. A party who seeks such relief must be free from any unlawful or inequitable conduct with respect to the transaction in question. City of New Orleans v. Board of Directors of the Louisiana State Museum, 98-1170 (La.3/2/99), 739 So.2d 748; Matheson v. Placid Oil Co., 212 La. 807, 33 So.2d 527 (1947). Because an estoppel cannot be created in favor of one who has induced the other to act by misrepresentation or concealment of the facts, the appellants are precluded from asserting this affirmative defense. Matheson, supra.

Attorney Fees
In her appeal, Patricia contends that the trial court erred in denying her recovery of attorney fees in this matter. Civil Code Article 1958 provides that the party against whom rescission is granted because of fraud in the confection of the contract is liable for damages and attorney fees. As to the sums awarded for attorney fees, the trial court is vested with great discretion in arriving at the award. The exercise of this discretion will not be reversed on appeal without a showing of clear abuse of discretion. Montet v. Lyles, 93-1724 (La.App. 1st Cir.6/24/94), 638 So.2d 727, writ denied, 94-1985 (La.11/18/94), 646 So.2d 377.
The record reveals evidence of a written agreement by which Patricia agreed to "pay and compensate Larry Foster for all sums advanced on her behalf" in the effort to seek return of the title of the property, "together with the cost of litigation including attorney fees, court cost[s] and any other costs associated therewith." Moreover, as an additional consideration for the expenses advanced by Larry Foster, Patricia agreed to "convey her right, title and interest in" the Madison Parish property to Beverly Fuller "in consideration for her assuming all debts and mortgages effecting title to said property." Based upon this agreement, the trial court denied recovery of the requested attorney fees finding that they would not benefit Patricia but rather would inure to the benefit of Larry Foster and Beverly Fuller who were to have the property transferred to them after a successful suit.
While the trial court is given great discretion in fixing the amount of attorney *1256 fees, we find that the ruling in this case erroneously abolished the remedy of attorney fees rightfully afforded Patricia under the Civil Code. Her arrangements with other parties for assistance in the litigation and executory agreements concerning the property are irrelevant to Patricia's entitlement to attorney fees under Article 1958. The fact remains that the cause of action in this matter belonged to no individual other than Patricia and the successful pursuit of that cause of action entitled her to an award of attorney fees under the law. Moreover, it is apparent that Patricia was personally obligated by the retainer agreement she signed in her individual capacity. On these grounds, we reverse the trial court's ruling denying attorney fees and grant Patricia reasonable attorney fees through the time of this appeal in the amount of $12,000.

Costs
Patricia also complains that the trial court erred in awarding only $500 to each appraiser, thus denying the full appraisers' fees as costs. At trial, Patricia presented the testimony of two real estate appraisers to establish the fair market value of the two pieces of property at the time of the sales in order to prove her claim of lesion beyond moiety.
Generally costs shall be paid by the party cast in judgment unless the judgment provides otherwise. The court may render judgment for costs, or any part thereof against any party, as it may consider equitable. La. C.C. P. art. 1920. The court has great discretion in fixing costs, including expert witness fees. Koehn v. Rhodes, 38,941 (La.App.2d Cir.9/24/04), 882 So.2d 757; Yuspeh v. Koch, 02-1179 (La.App. 5th Cir.5/28/03), 848 So.2d 96, writs denied, 03-1134 (La.6/27/03), 847 So.2d 1277, 03-1144 (La.6/27/03), 847 So.2d 1279. While it is the general rule that the party cast in judgment should be taxed with costs, the trial court may assess costs in any equitable manner. Yuspeh, supra. Generally, expert witness fees attributable to trial testimony or depositions introduced as evidence at trial are recoverable as costs. The amount of the expert witness fees must be reasonable. The amount actually charged by the expert does not determine the amount to be taxed as costs. Id. The factors to be considered by the trial judge in setting expert witness fees to be taxed as costs include time spent testifying and in preparatory work for trial, time spent away from regular duties while waiting to testify, the extent and nature of work performed, the knowledge, attainments and skill of the expert, the helpfulness of the expert's report and testimony to the trial court, the amount in controversy, the complexity of the problem addressed by the expert, and the awards in similar cases. Id.
In this case, the judge assessed court costs against the defendants but limited the appraisers' fees after considering the substantial nature of the values involved in the dispute. The evidence shows that the awarded amounts were less than half of what both experts charged. Nevertheless, we can find no manifest error in the cost assessment. While the court considered the expertise required in valuing the subject properties, the reasons for judgment reflect that the court did not rely significantly on their reports. On these grounds, we find no abuse of the trial court's discretion.

Conclusion
For the foregoing reasons, the trial court judgment rescinding the subject sales on the ground of fraud and assessing $1,000 expert witness fees as costs is affirmed. That portion of the judgment which denied attorney fees is reversed, and an award of $12,000 attorney fees is hereby granted. Costs of this appeal are assessed to defendants-appellants.
*1257 AFFIRMED IN PART; REVERSED IN PART; RENDERED.