917 So.2d 695 (2005)
Minnie Lee HAMILTON, Plaintiff-Appellant
v.
Charles E. WILD, Lilley'S Mail Service and Gemini Insurance Company, In Solido, or, In the Alternative, Shaunda Hamilton and State Farm Mutual Automobile Insurance Company, In Solido, Defendants-Appellees.
No. 40,410-CA.
Court of Appeal of Louisiana, Second Circuit.
December 14, 2005.
*696 Rice & Kendig, by J. Marshall Rice, William F. Kendig, Jr., for Appellant.
Lunn, Irion, Salley, Carlisle & Gardner, by James A. Mijalis, W. Orie Hunter, III, Shreveport, for Appellees, Charles E. Wild, Dale Lilley, Lilley's Mail Service and Gemini Insurance Company.
Sharp, Hymel, Cerniglia, Colvin, Weaver & Davis, L.L.C., by James H. Colvin, Shreveport, Zelda W. Tucker, for Appellees, Shaunda Hamilton and State Farm Automobile Insurance Company.
Before BROWN, WILLIAMS & PEATROSS, JJ.
PEATROSS, J.
This case arises from an automobile accident which occurred on July 1, 2003, at approximately 7:00 p.m. between Charles Wild and Shaunda Hamilton ("Shaunda") near the intersection of Monkhouse Drive and Hollywood Avenue in Shreveport, Louisiana. Following the accident, Shaunda and her mother, Minnie Lee Hamilton *697 ("Minnie"), who was a passenger in her daughter's vehicle, filed two separate suits. The first suit was filed by Shaunda against Mr. Wild, his employer, Lilley's Mail Service ("Lilley"), and its insurer, Gemini Insurance Company ("Gemini") (collectively referred to as "Mr. Wild"). The second suit was filed by Minnie against Shaunda, Mr. Wild, Lilley, Gemini and State Farm Mutual Automobile Insurance Company ("State Farm") for injuries Minnie sustained in the accident. After a trial on the latter of these suits, the trial judge ruled in favor of Mr. Wild. Minnie now appeals. For the reasons set forth herein, we affirm.

FACTS
Mr. Wild was operating a tractor trailer and Shaunda was driving a green 1995 Mazda Protégé at the time of the automobile accident. Minnie and Shaunda's minor son, Demarea, were passengers in the green Mazda. The accident occurred when both vehicles attempted to make a right hand turn from Hollywood Avenue onto Monkhouse Drive. Despite Mr. Wild's blinking right turn signal (that of the tractor trailer he was driving), Shaunda attempted to "sneak" past the rig/trailer in the limited space available on the right, inside lane of the street. Her attempt proved futile and the dolly from the trailer struck the left rear side of the green Mazda when both parties turned right. Minnie was taken to Willis-Knighton North emergency room the day after the accident and presented with pain in her neck, back, hand, shoulder and knees. She was treated for minor injuries and released.[1] This litigation ensued.
At trial, Mr. Wild testified that the tractor trailer he was operating was approximately "one foot" inside the "center lane" and otherwise completely in the "right turn lane." To the contrary, Shaunda testified that she believed the tractor trailer driven by Mr. Wild was in the "center lane," not the "right turn lane," because of its positioning. She admitted that the cars collided in a "slow impact" and stated that no one had any cuts or bruises as a result of the accident.
The trial judge issued Written Reasons for Judgment on January 25, 2005. In her Reasons, the trial judge stated that Shaunda's testimony was "self-serving," "confusing" and that she "undertook an unreasonable course of action with litigation and recovery of damages in mind." The trial judge further noted that Mr. Wild's (the tractor's) red blinking "turn signal" was on (illuminated/blinking) prior to his entering the intersection. The trial judge also found that Minnie underwent unnecessary medical treatment in bad faith and unreasonably failed to return to work; however she, nonetheless, awarded Minnie $530.10 in medical expenses, $644 in lost wages and $1,500 in general damages against State Farm. From this ruling, Minnie now appeals.

MINNIE'S ARGUMENTS

Assignment of Error One: The ruling that Shaunda Hamilton was 100% at fault for the accident is clearly wrong in light of the evidence presented at trial.

Minnie initially points to the applicable standard of review and cites the cases of Stobart v. State through DOTD[2] and Rosell *698 v. ESCO[3] standing for, inter alia, the proposition that this court may not reverse even if convinced that, had it been sitting as trier of fact, it would have weighed the evidence differently. Minnie argues that the trial court's ruling that Shaunda was 100% at fault in the case sub judice is "clearly wrong" and, thus, reversible. She cites La. R.S. 32:101, which states, in part:
A. The driver of a vehicle intending to turn at an intersection shall proceed as follows:
(1) Right turns. Both the approach for a right turn and a right turn shall be made as close as practicable to the right-hand curb or edge of the roadway.
She further cites La. R.S. 32:104(A), which states, in part:
A. No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in R.S. 32:101, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.
Minnie submits that "Mr. Wild failed to observe [these aforementioned] rules" and bears at least "some fault" for the resultant collision. At trial, Shaunda testified that she believed Mr. Wild would continue traveling straight because his blinker was not illuminated.[4] Minnie points out that Mr. Wild admitted at trial that he did not check his right side mirror prior to making the turn.
Minnie states that, even assuming Mr. Wild had checked his mirror in compliance with La. R.S. 32:101 and 104(A), supra, he still failed the charge set forth in Winfield v. Dih, 01-1357 (La.App. 4th Cir.4/24/02), 816 So.2d 942. In Winfield, supra, the court held that it is a well-settled rule that, when a driver looks and fails to see what he should have seen, that is the equivalent to a failure to look at all (and, in turn, negligence by that driver).
In response, Mr. Wild cites a portion of the judge's Reasons for Judgment, stating:
However, the court believed the testimony of Mr. Wild over that of plaintiff and her daughter and find as fact that Mr. Wild was in the right-hand lane with his right turn blinker on. The accident was caused by the actions of Shaunda in attempting to turn right in an unsafe manner and causing her rear bumper to come into contact with the loading dolly on the side of Mr. Wild's trailer.... Further, the court has found that Mr. Wild was in the right-turn lane with his blinker on. The court finds that Mr. Wild complied with La. R.S. 32:101 in that he remained as close as practicable to the right-hand side of the lane considering the size of his truck. The court finds that the sole cause of the accident was the inattentiveness and negligence of Shaunda Hamilton.
He supports this by citing Stobart, supra, and alleging that, based on these statements by the trial judge, and an absence of evidence to the contrary, there is no basis for this court to reverse. Mr. Wild goes on to point out several inconsistencies in Shaunda's testimony at trial. At trial, the following colloquy transpired:
Q: Do you remember, Ms. Hamilton, me taking your deposition several months ago where I asked you *699 questions regarding this accident and various things related to that?
A: Yes, sir.
Q: Do you remember testifying at the City Court trial and do you remember telling me in your deposition that you didn't see that truck until you were just three feet or so from it?
A: I would say it's about that, but I'm not really sure, sir.
Q: Well, you were sure a second ago...
...
A: Well, I wasn't  I would say today I'm not too good in directions, sir.
...
Q: I understand that ma'am, but I'm telling you right now that I'm standing three feet from you. Were you this far away from the truck when you first saw it, or were you further than that?
A: I was a little bit further than that, sir.
Q: Well, how much further?
A: I'm not good in directions.
Q: You really don't know where you were when you first saw the truck, do you?
A: No sir. I wasn't  I'm not too good in directions.
In summary, he states that this collision was caused by Shaunda's impatience and inattentiveness and she bears sole responsibility for this accident. Accordingly, he contends that the trial court was correct in so ruling. We agree.
Our review of the case sub judice reflects that the trial judge was correct in finding no fault on the part of Mr. Wild and, instead, finding that Shaunda was 100% responsible for this accident. We first note that, per Stobart and Rosell, supra, the standard of review in this case dictates that, even if this court were convinced that, had we been sitting as trier of fact, we might have ruled differently, we cannot overturn the trial judge's ruling. We next note that the trial judge found the following: that Mr. Wild's tractor-trailer was not in the center lane; that Mr. Wild's right turn blinker was illuminated; that Minnie's testimony that the impact was "powerful" contradicted the testimony given both by Shaunda and Mr. Wild; that Minnie alleged that she was so overcome with pain that she was unable to comb her hair, yet her hair was perfectly groomed and included a decorative ornament piece (and no testimony was given suggesting someone else did this for her); that the shoulder pain experienced by Minnie changed from one side of her body to the other seemingly without explanation; and that Minnie did not follow the instructions of her attending physician, Dr. Kamm.
The trial judge further concluded that Minnie's testimony was "confusing" and "self-serving" and noted that Shaunda and Minnie looked at each other and smiled or laughed at one another at inappropriate times during trial. Finally, the trial judge noted that no accident report was offered into evidence and City Court Judge Randy Collins rejected Minnie's claim. It is the view of this court that evidence overwhelmingly supports the trial judge's conclusion regarding fault. Our review of the record evidences nothing which convinces this court that this case should be overturned and sent back to the trial court. Accordingly, we agree with the trial judge's statement that Minnie "grossly and deliberately exaggerated" the impact of the collision and her resultant injuries.

Assignment of Error Two: The special damage award made by the Trial Judge to Minnie Lee Hamilton, in *700 light of the evidence presented at trial, failed to include all proven damages, and constitutes manifest error.

Assignment of Error Three: The general damage award made by the Trial Judge to Minnie Lee Hamilton, in light of the evidence presented at trial, is grossly low and constitutes manifest error.[5]
Minnie argues that the award of special damages is clearly wrong "based on the evidence presented at trial." The plaintiff has the burden of establishing by a preponderance of the evidence a causal relationship between the accident and her subsequent injuries. Maynor v. Vosburg, 25,922 (La.App.2d Cir.11/28/94) 648 So.2d 411, writ denied, 95-0409 (La.4/28/95) 653 So.2d 590 citing Lasha v. Olin Corp., 625 So.2d 1002 (La.1993); American Motorist Ins. Co. v. American Rent-All, Inc., 579 So.2d 429 (La.1991). The test for determining the causal relationship between the accident and subsequent injuries is whether the plaintiff proved, through medical testimony, that it was more probable than not that subsequent injuries were caused by the trauma suffered in the accident. Id., citing Mart v. Hill, 505 So.2d 1120 (La.1987). Minnie states that she presented ample medical records evidencing that her injuries were caused by this car accident.
Minnie further asserts that the parties to the case stipulated that, "if medical providers were called to testify, they would testify in accordance with impressions and diagnosis reflected in the medical records." To this end, she points out that her total medical expenses related to this accident were $7,553.51; and, yet, she only received $530.10 from the trial court in medical expenses. From this, she cites Koehn v. Rhodes, 38,941 (La.App.2d Cir.9/24/04), 882 So.2d 757, citing Vines v. Wood, 34,555 (La.App.2d Cir.4/4/01), 785 So.2d 126, in which this court held that a tort-feasor is required to pay for the cost of over treatment or unnecessary treatment unless that treatment was incurred in bad faith. The discretion of the trier of fact to assess special damages is narrower or more limited than the discretion to assess general damages. Koehn, supra. Neloms v. Empire Fire & Marine Ins. Co., 37,786 (La.App.2d Cir.10/16/03), 859 So.2d 225. Minnie states that there is no evidence in the record suggesting that her treatment was in bad faith. Similarly, Minnie points out that she missed four months of work due to the accident, which, according to her employer, resulted in lost income of $2,737. She states that the trial judge was "clearly wrong" in not making an award to Minnie for all of her lost wages.
Minnie also argues that the trial judge's reliance on Bass v. Allstate Ins. Co., 32,652 (La.App.2d Cir.1/26/00), 750 So.2d 460, is misplaced and factually distinguishable. She argues that, unlike the case sub judice, Bass, supra, involved an expert witness' testimony that a collision was so light that the cylinders in the car's bumpers (which soften impact) did not move. To the contrary, Minnie argues that no evidence has been presented in this case to show that the collision did not result in injuries. To this end, she points out that the collision was hard enough that the back windshield of the green Mazda shattered.
Finally, in her third assignment of error, Minnie argues that the trial court was clearly wrong for awarding only $1,500 in general damages for her "nine *701 month soft tissue injury." As stated in Koehn, supra, general damages involve physical pain, suffering, inconvenience, loss of gratification and the like. Similarly, in Doe ex rel. Doe v. Desoto Parish School Bd., 39,779 (La.App.2d Cir.6/29/05), 907 So.2d 275, this court stated:
Before an appellate court will disturb an award made by the trial court, the record must clearly reveal that the trier of fact abused its discretion in making its award. Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. Only after analysis of the facts and circumstances peculiar to this case and this individual may a reviewing court determine that the award is excessive. Thus, the initial inquiry must always be directed at whether the trial court's award for the particular injuries and their effects upon this particular injured person is a clear abuse of the trier of fact's much discretion. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may, on appellate review, for articulated reason be considered either excessive, or insufficient. Only after such a determination of abuse of discretion has been reached, is a resort to prior awards appropriate. (Citations omitted.)
From this, Minnie states that "[a]n award of $1500.00 is a clear abuse of discretion based on the evidence presented at trial." She points out that the trial judge based her general damage award on a duration of two weeks (of missed work). Minnie urges that this court review Maynor, supra, and apply the holding therein to the case sub judice.
In response, Mr. Wild cites Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), in which the supreme court stated that the adequacy or inadequacy of an award should be determined by the facts or circumstances particular to a case at issue. Mr. Wild argues that Minnie bore the burden of proof of causation at trial and "failed miserably [in meeting that burden]." He points to Orthopaedic Clinic of Monroe v. Ruhl, 34,700 (La.App.2d Cir.5/11/01), 786 So.2d 323, writ denied, 01-1727 (La.10/5/01) 798 So.2d 970, in which this court stated:
Causation is a fact-specific inquiry and the issue to be resolved is whether the factfinder's conclusion is a reasonable one ... when two reasonable views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong.
From this, he points out that the trial judge stated that "[the] plaintiff grossly and deliberately exaggerated the impact experienced in the accident and the extent of her alleged injuries."[6] Finally, Mr. Wild points out that Minnie saw Dr. Kamm some four months following the accident with a litany of (new) complaints, i.e., right shoulder, knee and ankle, and left chest, hand and leg; however, when she presented the day following the accident, she had "only left shoulder pain." (Emphasis Mr. Wild's.)
Mr. Wild next responds to Minnie's assertions that she is due a greater amount in lost income (assignment of error three). In Driscoll v. Stucker, 04-0589 (La.1/19/05), 893 So.2d 32, the supreme court stated that "[t]he trial court is accorded broad discretion in assessing awards for lost earnings, but there must be a factual basis in the record for the *702 award." Similarly, in Boyette v. United Service Auto. Ass'n, 00-1918 (La.4/3/01), 783 So.2d 1276, the supreme court stated: "[t]o recover for actual wage loss, a plaintiff must prove that he would have been earning wages but for the accident in question." Mr. Wild notes that Minnie was advised by Dr. Kamm to take off one week of work and return for an evaluation; however, she did not return for her follow-up, but, instead, began seeing a chiropractor at her attorney's suggestion. To this end, he argues that Minnie failed to meet these burdens and the trial judge was correct in so ruling. We agree.
Our review of the case sub judice reflects no basis in the record for increasing the damage awards to Minnie, nor any clear abuse of discretion in the award granted by the trial judge. We first note, as stated, supra, that the trial judge found that Minnie "grossly" and "deliberately" exaggerated the extent of her injuries. The record indicates that Minnie went to the emergency room the day following surgery and was diagnosed with a mild muscle strain. Six days after the accident, Minnie saw Dr. Kamm, who confirmed the emergency room diagnosis, advised her to take a week off of work and to return the following week for reevaluation. She did not follow up with Dr. Kamm, opting instead to see a chiropractor on the advice of her attorney. The chiropractor did not testify at trial. It was not until four months later that she returned to Dr. Kamm, this time presenting with a bevy of new complaints. Given the language in Orthopaedic Clinic of Monroe, supra, and in the absence of jurisprudence or prevailing evidence to the contrary, we cannot say the award of damages was clearly wrong/manifestly erroneous, nor do we see an adequate basis to increase Minnie's award.

CONCLUSION
For the reasons set forth herein, the ruling of the trial court finding no fault of Charles Wild, et al, is affirmed. The ruling of the trial court awarding $2,674.10 against Shaunda Hamilton and State Farm Mutual Automobile Insurance Company is affirmed. Costs of this appeal are assessed to Minnie Lee Hamilton.
AFFIRMED.
NOTES
[1] Appellant's brief indicates that Minnie continued to see her attending physician, Dr. Richard Kamm, over the following months. Dr. Kamm released Minnie in April 2004, noting that she had reached her "maximum medical benefit" and documenting that she was still experiencing pain in her upper extremities.
[2] 617 So.2d 880 (La.1993)
[3] 549 So.2d 840 (La.1989)
[4] The matter of Mr. Wild's (the tractor-trailer's) rear lights being illuminated appears to be a subject of disagreement between the parties. Mr. Wild contends that his blinker was illuminated. In her Written Reasons, the trial judge stated that she believed Mr. Wild on this issue.
[5] Due to the interrelatedness of assignments of error two and three, we elect to respond to them collectively for the purposes of this appeal.
[6] Mr. Wild further argues that Bass, supra, is inapplicable to the case sub judice as the medical treatment sought by Minnie in this case was done in bad faith as noted in the trial judge's Written Reasons. (Emphasis ours.)